Alright, I believe then we are ready for Case 2 for this morning. United States v. Spectrum Brands, Ms. Odorizzi. Good morning. May it please the Court, Michelle Odorizzi for Spectrum Brands. I'd like to begin this morning with the statute of limitations. I think it's important to emphasize that the government's position from the beginning of this case is that the reporting obligation arose in May 2009, and therefore its claim first accrued in 2009. But I don't think that's the government's view at all. I think the government regards this statute as one which requires the party in question to get the word to the Consumer Product Safety Commission, either through reporting or there's the option if the Commission finds out through other, and you know that there's actual knowledge. Because it just doesn't make sense for a reporting obligation to go up in smoke if you can somehow manage to avoid reporting for a certain period of time, whether it's 48 hours or 24 hours or two years or whatever. Your client didn't complete the report, I will say, until it actually reports to the Commission. And so why is not doing a report under this statutory scheme something that makes any sense? Well, Your Honor, the government's position really was that it was May 2009. No, that was when the trigger for the duty, but the duty itself is a reporting duty. It's not a duty to get a permit where if you get a permit, you can do something, and if you go ahead and build the building without a permit, you've done everything you need to do to violate that law. But your duty to even do something doesn't arise in a reporting statute until you've failed to report, so that's when this accrues. Your failure to report was an ongoing event until you did report. Well, Your Honor, the duty to report here does arise for the first time, the government says, in May 2009, and the Court found that in the penalty hearing. But listen to yourself. So all you have to do is just brazen it out and keep your secrets very close to the chest, and you can completely avoid the entire reporting scheme under the Consumer Product Safety Act. Is that it? No, Your Honor. That's exactly what you're saying. We don't say that the duty evaporates after 24 hours, but you do have a duty to report within 24 hours. And then the next day, you still have the same knowledge, and you have a duty then. I mean, you can do it that way, too. I suppose you have a new duty every day. But the statute says that the statute of limitations starts to run when it first accrues. Well, I just completely disagree. If we adopt your view, Ms. Odorisi, as to when the limitations begin to run, then we're going to have pitched battles over how soon a company was first obliged to make a report. And that might be difficult to resolve when you have a long, you know, a long period of time over which many complaints were received and perhaps various investigations were conducted and modifications were implemented. And for heaven's sake, why would Congress want the statute of limitations to begin running at the first moment the spectrum knew? Your Honor, if I might, this was a very important point for the government because they want people, their theory is that you have to report as soon as you know that a product might be dangerous. But of course they want that theory. But on the other hand, put yourself in the position of the government for a moment. Why would you say that if somebody just manages to keep quiet and note, that means the Consumer Product Safety Commission has no idea that these coffee pots are breaking or the carafe handles are falling off or whatever's going on with these things. The commission doesn't know to block enforcement action because you managed to conceal information from the commission. It's a very bad statutory system. Your Honor, there's no claim of concealment here. There's a question of when was the duty triggered. Of course there's a claim of concealment. You didn't report to the commission. They say we violated a duty to report, which started in May of 2009, because they recognized that there was a defect in the coffee pots. At that point, they reengineered them. The commission didn't know all of this. The commission didn't know whether this defect rose to the level of the sort of thing that triggers a recall. There are lots of product defects that don't trigger a recall. Your Honor, the commission's whole point here is that you have a duty to report before you've reached the point at which you need a recall. That's the whole point. I agree with that, but it's a continuing duty to report until either you report or the commission learns from alternative sources that the problem is out there. Well, if that's true, Your Honor, then there is no effective statute of limitations. Well, that's right. Well, except that maybe the commission does learn. In this case, the commission probably found out about the class action the same time you did. But what Incabelli, the court said, you can't have a discovery rule. It's not a discovery rule. It's a continuing obligation rule. That's quite different from a discovery rule. Well, but, Your Honor, that reads out of the statute, the notion of first accrued. And if I may, just to make this point, the government's point was that you should have reported in May of 2009, not because you knew there were a lot of claims out there. There had been 60-some reports and four minor injuries reported, but because you knew there was a defect and you knew this was hot coffee, and therefore there was a potential for harm. And the court said here. And you waited until 1,600 people had been hurt. No, not 1,600 people hurt, Your Honor. 1,600 reports of defects and only a few injuries. Of handles falling off, glass breaking. No, Your Honor, that is not what the judge said here, is there was no evidence of any catastrophic failure. There's no situation where the whole handle falls off. What happens is a screw comes loose and it becomes wobbly. That's what the evidence is, Your Honor. And that's why they didn't report initially, because they were under the mistaken impression that because the injuries were minor, they didn't have an obligation to report. So the question here for the government is very important. They were trying to send a message, which they did, to Spectrum to say, no, you have to report because, and if you read the depositions that were put in evidence at the penalty hearing, it's very clear. They're harping on the fact it's hot coffee. You know it's a pot full of hot coffee, and somebody could be hurt. And some people were. Minor injuries, Your Honor, minor injuries. Well, you know, really, to insist that Spectrum's violation was complete, as you do, that the limitations period began to run, and that all the subsequent events, which include more than 1,000 additional complaints about the coffee maker, that all of that in no way extended the statute of limitations period, for me is just a remarkable proposition. It gives companies an incentive to stay quiet, even as the company continues to receive consumer complaints, in some hope that the limitations period will expire, you know, before the government becomes aware of the hazard and files suit. And that cannot possibly be what Congress intended, because it is directly at odds with the consumer safety goals of the statute. And, I mean, you know, you may think that the injuries are minor, but that's a terrifying experience for a lot of people, something exploding like that. Your Honor, there were no exploding coffee pots here. There were no catastrophic failures. Exploding? There wasn't any. And the Act talks about a substantial risk of injury to the coffee maker. But what it also talks about, I'm looking at 2064B, the manufacturer shall immediately inform the commission of such failure to comply, of such defect, or of such risk, unless such manufacturer, et cetera, has actual knowledge that the commission has been adequately informed. So you have a continuing obligation immediately to inform the commission until you know for sure that the commission has been informed already. You don't have to pile on. But if you don't have that actual knowledge that the commission has been adequately informed, your duty arises every minute. It's a continuing obligation. Well, we don't dispute that there's a continuing duty, Your Honor. But again, we go back to the first accrues language. But if there's a continuing obligation, there are various statutes that fall into this category, whether you're found in the United States without the permission of the Attorney General. You can't say, oh, you didn't find me the first day, and therefore you can't prosecute me under 1326A. That's true.  They have different statute of limitations. I'd like to get on to the injunction point quickly. But we would call Your Honor's attention to this Sierra case in the Tenth Circuit where there was a continuing obligation from the beginning of construction to the end, and the court said it didn't matter because you look when it first accrued. Well, that's a permit situation, so I think we'll have to just take a look at that. Well, Your Honor, if I may turn to the injunction. Yeah, go ahead. We have an injunction that tells Spectrum, go out, that says keep doing what you're doing because there were some changes to Spectrum's procedures. Which were helpful changes because they said if you do the following things, you will be deemed to be in compliance with the injunction. Right. But then the judge said, go out and hire a neutral expert to go and to... It's very common in injunctions. You've probably seen lots of them. But, Your Honor, here the court never really found that Spectrum was likely, reasonably likely, to re-offend. The court was not happy with the way Spectrum had handled this particular situation. I agree, Your Honor, but that was... I think that's why it thought the consultant, now under RUFO, you know, after a year or so or some period of time, you're free to go in and ask the court to eliminate that. But the court thought it was, for the time being, important. But, Your Honor, it was the government's burden to show that it was reasonably likely that something bad would happen. And now it's your burden to show that the district court abused its discretion in choosing that form of injunction. Right. But what the judge said is, I can't say whether those procedures that you have in place now are good or bad. The government put in no evidence on that. We had an expert who came in and said they were. And the judge said, I can't tell. Maybe they're not enough. So, rather than hold the government to its burden of proof, it said that we have to go out and hire somebody else. That should have been done before you issue an injunction. That's putting the cart before the horse. Okay. Well, if you'd like to save a little rebuttal time... Save the rest for rebuttal. Thank you. That would be fine. Mr. Simsdack? May it please the court, Jerry Simsdack, appearing on behalf of the United States. The district court correctly concluded that Section 15B imposes a continuing obligation on parties to report to the commission both its text, and I think as has been discussed already, its purpose indicate that there is a continuing obligation to report to the commission. It does not expire 24 hours after it first arises. And moreover, the statute of limitations does not begin to run until that violation is complete. And in this case, it's not complete until either a report is filed or the government has actual knowledge of a defect. So, what do you do with the language that Ms. Oterizzi is relying on? First of all, the language about first accrual. And secondly, I'd like to hear what you have to say about the Sierra Club 10th Circuit decision. I think there are two ways of viewing the continuing violation doctrine. I think either one satisfies the first accrued and reaches the same result. One is, as Your Honor briefly mentioned, and this court has said before in cases like Midwest Generation where there's a continuing violation, you effectively violate the statute each day that you don't meet that obligation. So a new crime accrues each day. And then the effect of that is that the statute of limitations really doesn't begin to run until the violation is complete because you have a new violation each day. Alternatively, it has been discussed in other cases that the claim does not first accrue until the violation itself is complete. But in either case, the point being, and I think this is summarized particularly well in the Berkelbach case, that if you have a continuing obligation to do something, as long as you're in violation of that obligation during the limitations period, there's no way that the statute of limitations under 2462 has run. If that were the case, you would have the absurd results that have already been discussed where a company has a duty to report, they don't report for five years, and then they're free to violate the statute forever without reporting. And that kind of absurd result is what this court decried in Berkelbach where if you have an obligation and you're in violation of that obligation, you can't rely on your past misconduct to shield you from liability for an ongoing violation. When did the government contact the company and tell them there was a violation? It did so in April 2012 after the company, well, the company reported in April 2012. And then there was discussions with the Consumer Product Safety Commission. And that resulted in a recall of the product. And so that's really the first thing that the Consumer Product Safety Commission does any time it gets a report. It wants to know if it has to take corrective action. So that's the first step. Is that when the statute of limitations starts to run? When the report was made. Because at that point, that's when it's satisfied its reporting obligation. So yes, and I think that's a key point too. This isn't a statute of limitation that runs forever. The offense might run for a long time, the failure to violate the report. But the statute of limitations began running in April 2012. And if the government hadn't filed suit by April 2017, Spectrum wouldn't be liable for those past failures to report. So it's not a forever running statute. It's the generic statute of limitations if there isn't another one. Exactly. And I'll just talk briefly about the Sierra Club case. I think a couple things. First of all, as Your Honor mentioned, that was referring to a permitting statute. In fact, the very same statute this court interpreted in Midwest Generation as providing a single requirement that a permit be acquired before construction began. So why is that a different situation? Is that because construction is such a public event, or is it because permits are somehow different from reports? Because I think there is a specific deadline for when that permit was required. And I think that part of the, especially in this case, when you have a reporting violation, the key is that if you report, you're reporting information so that the Consumer Product Safety Commission can take action to correct it. Because there is a problem and you need to fix it. But a permitting requirement, I think the key language in that statute, though, was that the permit was required to be obtained before construction began. And also, obviously, yes, there is a case. So the offense is complete. The violation, regulatory violation, whatever it is, is complete the day they break ground, so to speak. Yes, exactly. And in fact, in that case, I think this court mentioned, if the statute had said you need to get a permit while you're operating, that would be a continuing offense because that would continue while the operation of the plant was in operation. And I think another problem with the Tenth Circuit case as well is there's a bit of a nomenclature problem. It uses the phrase continuing violation to distinguish as repeated violations, where I think this court has used the term continuing violation more in the sense of a repeated violation. And the Tenth Circuit said a repeated violation would be timely. And that's what we have here. Again, I think the simplest way to think about it is if you're under an ongoing obligation to report and you have information in your possession, you don't report that day, you violated the statute that day. And as long as you did that within the statute of limitations period, then it's timely. And I think in this case it's particularly egregious what happened here because you have a company that's saying, yes, way back in May 2009 we received 60 or so reports. We're under a duty to report. But if we had managed to hide that for five years, even though there was mounting evidence of problems, 1,600 reports by the end of the day. So is this a trivial problem? I mean, Otorizzi says, oh, so the screws are loose in the handle. Your Honor, of course it's not a trivial problem. And the district court, of course, didn't think it was a trivial problem either. We're talking about there were reports of burns and lacerations. Fortunately no one was hospitalized or anything as a result. But we're talking about hot coffee that's being pulled out from underneath a desk or underneath a cabinet. Under the counter. Yeah, and the handle's breaking off. And so the fact that no one was more seriously hurt is fortunate. But certainly this was a serious problem. And it wasn't a case where there were a couple isolated reports of something going wrong. This was a case where there were 1,600 ultimately reports that were mounting over time, including multiple reports of burns and so forth. Whatever happened to the class action? I believe the class action settled. No surprise there. Plaintiffs might have a better sense. But again, I think that just underscores. I mean, we don't know that Spectrum would ever have reported if not for that class action lawsuit that came in. What's the mechanism for evaluating and implementing whatever recommendations the outside consultant called for that was called for by the injunction? What would he make? So we don't know what recommendations he'll make. But what the district court has said is that if Spectrum is unhappy with those recommendations, if they find they're too onerous or improper in some way, they can go back to the district court, who maintained jurisdiction over the case, and say these additional obligations are too onerous and we should be relieved from them. And if they file such a motion, the district court said they're not required to do so, at least until the district court rules on it. What other products does Spectrum make where this injunction would affect? Or are there any? Your Honor, they make many products. How many besides the coffee pot are subject to this injunction? I would assume all of the products. Really? Because the duty is to report any product to which the CSPA applies. But presumably they have one compliance department and one distribution department and so forth to ensure that their products meet safety standards and so forth. They have, for example, a consumer-facing department that takes consumer complaints and so forth. And they have an engineering department that engineers responses. So presumably those communications amongst those groups would be the type of compliance that's being... So this is something that is unique then to Spectrum. I mean, every company has lots of products that, you know, maybe they don't do something, but they're not under an injunction. Well, Your Honor, they haven't been shown to have violated the CSPA. I mean, that was in a pretty egregious way here. Not only did we have these reporting violations, and this is a lot. What else does Spectrum make that you know of? I know they make other coffee makers, but I'm... Is that it? I believe they make more than that. I'm actually... I apologize, Your Honor, I don't know. I heard her say something about it was because there was a screw that came loose or something. And I have to admit, I have a couple of things at home that I have to tighten screws, you know, because the handle shakes. I mean, maybe that's a typical problem with other products. Well, their brief says they sell more than 24 million products per year across more than 500 SKUs. So clearly a lot. They're a big company. They're a big company, and they do sell other products. But the reason they're subject to this injunction is because they show... The district court found, and the district court was quite firm in this, that there were systematic problems at the company that led to the violations in this case. And it wasn't just the reporting... No, it's other companies. It's not like they're the first company who's ever violated... Your conference is scheduled to end in two minutes. I'm sorry, this is our... We're having a little technical problem this morning. But you guys will take care of that. Anyway, so I assume that there are other companies who occasionally... There are, yes. ...are prosecuted for this and would be under a similar... There are, and in fact, there are. The independent consultant requirement, for example, is a common feature of at least settlements. It's a common feature of settlements, but it's also within the judge's equitable power to do that. It's a way of making things concrete, actually, which usually companies like. Because if you're faced with a contempt possibility, it's very important that an injunction not be vague. You would strike it down, if it were. Yes, I agree, Your Honor. In fact, that was Spectrum's argument initially, that this injunction was too vague. Right, so the judge... We went through this back and forth because appellate jurisdiction was here, and then it went back for the judge to make it more concrete for the company. That's correct. Is that what this new hire, or whatever you want to call that person you're supposed to hire, is supposed to do? Yes, I mean... Check all the products and tell on them if they're doing something? To be clear, the consultant is a short-term person who were to come in and just... To get the systems in place. To get the systems in place to a value. Not just the systems. The systems for compliance in place. Oh, I see. So this is one time. One time, and then make recommendations, and then they can litigate the recommendations if they want, or they can implement them, and they'll have satisfied at least that aspect of the injunction. Your Honor, does that have no further questions? I see none, so thank you very much. And so do we. Your Honor, just a couple things. Your conference is now over. Goodbye. We're not dismissing you. I'm sorry for this. Okay. One thing to keep in mind is that there's no dispute that Spectrum already had a lot of compliance systems in place, and what the court found is that they made a mistake by treating this as a quality problem rather than a safety problem, and there was a lack of communication between the engineers and the safety compliance people. So Spectrum is a large company. It sells a lot of consumer products, appliances, and it has this whole oedipus in place for compliance. And what the court did here is it didn't find that the current procedures are inadequate in any way. The government didn't argue that they were inadequate in any way because the government says that's your, you know, it's for companies to do, and yet we get an injunction to say behave in the future, even though this is an isolated occurrence. It's happened, what, five years ago that they didn't report, that they did, and they said it was a mistake in judgment. In hindsight, they're not a serial violator. The court said they're not. The court said there was no scienter here. They weren't deliberately avoiding their reporting obligations. They're not being asked, as you yourself are saying, to do anything that they're not already doing, other than listen to the recommendations of this consultant. You'll get the report. You'll go back to the court, and you'll say, okay, we've got the report. Here's our response. The court says you don't have to implement anything that you don't like until the court has signed off on it. So I could imagine a lot more onerous requirements. Absolutely, Your Honor, but that still doesn't get you by the threshold that you still have to have a reasonable likelihood that you're going to have a violation in the future. And the judge made that finding. Well, he made that finding, but then his subsidiary findings to that are, you know, you want to comply. I understand you want to comply. He's being nice to you. I mean, he's saying, you know, here we are. We're moving on. So I... And I thought you were actually making a more ambitious argument that the statute didn't even allow for future corrections. Well, Your Honor, we do make that argument as well. That requires a strange reading of the word any, in my opinion. But there are other statutes that say restrain or prevent. Sure. Some Congress drafts them differently. But they do say any, and injunctions very frequently are forward-looking. Right. But our view is that it's not... You're saying no structural injunctions here. They can only be prohibitory injunctions, which is wild. Right. Your Honor, going back to something the counsel for the government said, the company did report this in April 2012 as part of... But what it did is a fast-track recall, which when you do that, you don't admit that there is any defect. The company was the one that decided to do the recall in order to settle the class action. And they actually recalled everything. They recalled both the defective units and the ones that they had sold after they fixed them. So they just recalled everything, and shortly after that they discontinued the product. Right. So this was not... But it's this April 3, 2012 date. Yes. That is when the report happens, and we all agree that the suit is filed within five years of that date. Of that, right, Your Honor. And, of course, the government decided that they were going to bring this lawsuit, or that they were going to charge us with failing to report in a timely manner well in advance of what we say the statute of limitations was, several months, and yet they sat on it. So this is not the kind of situation... Okay, well... ...where we were going off and deliberately trying to hide. Okay, thank you very much. Thanks to both counsel. We will take the case under advisement.